**IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

PATRICK SOBECKE,

        Plaintiff,

  vs.

MARK KOZLOWSKI, M.D.; WADE SMITH, M.D.;     CIVIL ACTION NO.
ALLISON BEARD, RN; CASSIDY QUINTANA, EMT;
MATTHEW LUDTKE, EMT; HCA-HEALTHONE
LLC d/b/a Swedish Medical Center; and DENVER
HEALTH AND HOSPITAL AUTHORITY d/b/a Denver
Health Paramedic Division a/k/a Denver Health EMS,

        Defendants.

**COMPLAINT, CERTIFICATE OF REVIEW and JURY DEMAND**

      Plaintiff Patrick Sobecke, through his counsel, Leventhal Puga Braley P.C., submits the following Complaint, Certificate of Review and Jury Demand:

**CERTIFICATE OF REVIEW**

      Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

      a.    Counsel has consulted with physicians and other healthcare professionals with expertise in the areas of the alleged negligent conduct as set forth in Plaintiff's Third Amended Complaint; and,

      b.    The physicians and other healthcare professionals who have been consulted have reviewed all known facts relevant to the allegations of negligent conduct as complained of in Plaintiff's Third Amended Complaint; and,

      c.    Based upon such facts, these physicians and other healthcare professionals have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

      d.    The physicians and other healthcare professionals who have reviewed all known facts relevant to the allegations of negligent conduct as contained in Plaintiff's Third Amended Complaint meet the requirements set forth in C.R.S. § 13-64-401.

1

**PARTIES, JURISDICTION AND VENUE**

1. At the time of the incident, Plaintiff Patrick Sobecke was a resident of the State of Colorado.

2. Currently, Plaintiff Patrick Sobecke is a resident of, and domiciled in, the State of North Carolina.

3. At all relevant times, Defendant Mark Kozlowski, M.D. ("Defendant Kozlowski") was a physician licensed to practice medicine in the State of Colorado, specializing in emergency medicine and a resident of the State of Colorado. Upon information and belief, Defendant Kozlowski is domiciled in the State of Colorado.

4. At all relevant times, Defendant Wade Smith, M.D. ("Defendant Smith") was a physician licensed to practice medicine in the State of Colorado, specializing in orthopedic medicine and a resident of the State of Colorado. Upon information and belief, Defendant Smith is domiciled in the State of Colorado.

5. At all relevant times, Allison Beard, R.N. ("Defendant Beard") was a registered nurse licensed to practice medicine in the State of Colorado and a resident of the State of Colorado. Upon information and belief, Defendant Beard is domiciled in the State of Colorado.

6. At all relevant times, Defendant Cassidy Quintana ("Defendant Quintana") was an emergency medicine technician in the state of Colorado and a resident of the State of Colorado. Upon information and belief, Defendant Quintana is domiciled in the State of Colorado.

7. At all relevant times, Defendant Matthew Ludtke ("Defendant Ludtke") was an emergency medicine technician in the State of Colorado and a resident of the State of Colorado. Upon information and belief, Defendant Ludtke is domiciled in the State of Colorado.

8. At all relevant times, Defendant HCA-HealthOne LLC, d/b/a Swedish Medical Center ("Defendant HealthOne") was a Colorado limited liability company with its principal office at 4900 South Monaco Street, Suite 380, Denver, Colorado, 80237.

9. Defendant HealthOne is vicariously and/or contractually liable for the actions and inactions of its employees, agents, partners, principals, and/or shareholders, including Allison Beard, R.N..

10. At all relevant times, Defendant Denver Health and Hospital Authority d/b/a Denver Health Paramedic Division a/k/a Denver Health, ("Denver Health") was a Political Subdivision and/or Local Government operating under the laws of the State of Colorado with its principal address located at 601 Broadway Street, M/C 0172, Denver, Colorado, 80203.

11. At all relevant times, Defendant Denver Health and Hospital Authority operated the Denver Health Paramedic Division as a division of the Denver Health and Hospital Authority.

12. At all relevant times, the Denver Health Paramedic Division was the sole provider of emergency medical services for the City and County of Denver, Colorado, operating as a division of the Denver Health and Hospital Authority.

13. At all relevant times, Defendant Denver Health and Hospital Authority was responsible for the actions and/or inactions of the Denver Health Paramedic Division.

14. Defendant Denver Health and Hospital Authority is vicariously and/or contractually liable for the actions and inactions of its employees, agents, partners, principals, and/or shareholders, including Matthew Ludtke and Cassidy Quintana.

15. Notice pursuant to C.R.S. §24-10-109 was properly given in this matter.

16. This is a diversity action filed under the provisions of 28 U.S.C. § 1332(a)(1) by reason of the complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00.

17. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 § U.S.C.A. 1332.

18. The sum or value of Plaintiff's damages exceeds $75,000.00 exclusive of interest and costs.

19. Long arm jurisdiction exists pursuant to Colorado Revised Statute § 13-1-124(1)(a,b) because the tortious acts occurred in the State of Colorado.

20. Venue is proper in this Court under 28 U.S.C. § 1391 because the tortious acts that gave rise to the claims alleged herein occurred in the State of Colorado.

## **GENERAL ALLEGATIONS**

21. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

22. On May 16, 2020, Patrick Sobecke was involved in a motorized scooter incident which injured his leg.

23. Following the motorized scooter incident, Mr. Sobecke returned to his home.

24. At approximately 2:25 P.M. on May 16, 2020, Mr. Sobecke called 911.

25. At approximately 2:30 P.M. on May 16, 2020, Denver Health EMS arrived at Mr. Sobecke's home, where they emergently transferred him to HCA-HealthOne LLC d/b/a Swedish Medical Center (Hereinafter "Swedish Medical Center").

26. Swedish Medical Center is owned and operated by HCA-HealthOne LLC (Hereinafter "HealthOne").

27. Defendant Kozlowski was the emergency room physician who evaluated and treated Mr. Sobecke at Swedish Medical Center.

3

28. Defendant Beard was the emergency room nurse while Mr. Sobecke was at Swedish Medical Center.

29. Mr. Sobecke presented to Swedish Medical Center at approximately 3:05 P.M., complaining of left knee pain after catching his leg on the ground while riding a motorized scooter at approximately 35 miles per hour.

30. Mr. Sobecke reported to medical providers that he had did not fall off the motorized scooter but rather used his legs to prevent a fall, which injured his left leg.

31. At approximately 3:05 P.M., Mr. Sobecke told medical providers that his pain intensity level was 5.

32. At approximately 3:48 P.M., Mr. Sobecke reported to medical providers that his symptoms began approximately 2-4 hours ago and were constant.

33. At approximately 3:48 P.M., Mr. Sobecke reported to medical providers that his pain was severe with an intensity of 8.

34. Mr. Sobecke denied any left hip pain but told medical providers that he was unable to place any weight on his left leg.

35. At approximately 3:20 P.M., Dr. Kozlowski ordered an x-ray of Mr. Sobecke's left knee.

36. At approximately 3:24 P.M., an x-ray of Mr. Sobecke's left knee revealed "Nondisplaced linear lateral tibial plateau fracture with large suprapatellar effusion".

37. After independently reviewing Mr. Sobecke's x-ray, Dr. Kozlowski applied a knee immobilizer splint to Mr. Sobecke's left knee.

38. Dr. Kozlowski placed a call to Dr. Smith for an orthopedic consult at approximately 3:47 P.M.

39. Upon information and belief, Dr. Smith was the on call orthopedic/trauma surgeon on May 16, 2020 for HealthOne.

40. At approximately 3:52 P.M., Dr. Kozlowski conducted a re-evaluation of Mr. Sobecke.

41. During the re-evaluation, Mr. Sobecke reported to Dr. Kozlowski that he had meniscus repairs when he was in Texas and Virginia.

42. During the re-evaluation, Mr. Sobecke told Dr. Kozlowski that he saw Rachel Frank, M.D. for orthopedic care.

43. At approximately 3:57 P.M., Dr. Smith returned Dr. Kozlowski's consult call.

44. At approximately 4:00 P.M., Dr. Smith made the determination not to physically examine Mr. Sobecke.

45. Upon information and belief, at approximately 4:00 P.M., Dr. Smith reviewed Mr. Sobecke's x-ray.

46. At approximately 4:00 P.M., Dr. Smith determined that Mr. Sobecke did not need to be admitted to Defendant Swedish Hospital.

47. Dr. Smith and Dr. Kozlowski jointly agreed that Mr. Sobecke was safe for discharge.

48. Based on Mr. Sobecke's tibial plateau fracture, Dr. Kozlowski knew or should have known that Mr. Sobecke was required to be admitted to the hospital for a 24-hour observation period due to the potential for vascular injury with this type of injury.

49. Based on Mr. Sobecke's tibial plateau fracture, Dr. Smith knew or should have known that Mr. Sobecke was required to be admitted to the hospital for a 24-hour observation period due to the potential for vascular injury with this type of injury.

50. Based on Mr. Sobecke's tibial plateau fracture, Nurse Beard knew or should have known that Mr. Sobecke was required to be admitted to the hospital for a 24-hour observation period due to the potential for vascular injury with this type of fracture

51. Nurse Beard knew or should have known that Mr. Sobecke's left tibial plateau fracture required a 24-hour observation period in the hospital, and Nurse Beard did not call her nursing supervisor or go up the nursing chain of command to advocate that Mr. Sobecke be admitted to the hospital for a 24-hour observation period.

52. On May 16, 2020, Defendants Kozlowski, Smith, Beard and HealthOne were all working as a Team while Mr. Sobecke was in the emergency department

53. On May 16, 2020, Defendants Kozlowski, Smith, Beard and HealthOne all had the same common goal of providing care and treatment to Mr. Sobecke.

54. On May 16, 2020, at approximately 4:42 P.M., Mr. Sobecke was discharged to home.

55. Mr. Sobecke's primary discharge impression was left tibial plateau fracture.

56. Mr. Sobecke's secondary discharge impression was h/o lateral meniscus repair of left knee.

57. Mr. Sobecke received discharge instructions which stated: You should seek medical attention immediately, either here or at the nearest emergency department, if any of the following occurs: "Severe (serious) pain increase in the affected area".

58. Mr. Sobecke's discharge was handled by Nurse Beard.

59. Mr. Sobecke's friend accompanied him home from Swedish Medical Center and then went to a nearby pharmacy to fill Mr. Sobecke's pain medication prescription.

60. After arriving home from Swedish Medical Center, Mr. Sobecke's pain intensified.

61. On May 16, 2020, while Mr. Sobecke's friend was getting his prescription, Mr. Sobecke became concerned about his ongoing pain.

62. At that time, Mr. Sobecke felt extraordinary pain and the pain felt like stabbing.

63. At that time, Mr. Sobecke's whole foot was numb and he could not feel or move it.

64. As a result of his left foot pain, Mr. Sobecke called 911 at approximately 6:24 P.M.

65. At approximately 6:33 P.M., Denver Health EMS arrived at Mr. Sobecke's home.

66. Denver Health EMS and/or the Denver Health Paramedic Division was operating as a division of Defendant Denver Health and Hospital Authority.

67. The responding EMTs were Cassidy Quintana and Matthew Ludtke ("EMTs").

68. Three Sheriff's Deputies came with the ambulance.

69. Mr. Sobecke told Ms. Quintana and Mr. Ludtke that he had fractured his leg earlier that day, that he had been discharged with instructions to seek medical attention if his pain intensified, that his pain had intensified, and he thought he should return to HealthOne.

70. While the EMTs were attending to Mr. Sobecke, Mr. Sobecke's friend returned from the pharmacy with his pain medication.

71. Neither Ms. Quintana nor Mr. Ludtke performed any physical exam and instead encouraged Mr. Sobecke to take his pain medication.

72. The EMTs told Mr. Sobecke that his foot pain was referred pain, that it was normal, and that he did not need to go to any hospital.

73. Based on Mr. Sobecke's tibial plateau fracture, the EMTs knew or should have known that Mr. Sobecke was required to be admitted to the hospital for a 24-hour observation period due to the potential for significant swelling resulting in compartment syndrome and other complications with this type of fracture

74. On advice of the EMTs, Mr. Sobecke did not return to the Emergency Department.

75. Over the weekend, Mr. Sobecke took his pain medication.

76. On Monday, May 18, 2020, Mr. Sobecke called his orthopedic physician, Dr. Rachel Frank.

77. Mr. Sobecke told Dr. Frank that he was having lots of pain in his lower leg and could not move his foot.

78. Dr. Frank told Mr. Sobecke to go straight to the University of Colorado Emergency Department.

79. On May 18, 2020, at approximately 11:29 AM., Mr. Sobecke arrived at the University of Colorado Hospital Emergency Department.

80. At the University of Colorado Hospital Emergency Department, there was a pre-arrival note from Orthopedics saying they are concerned for compartment syndrome.

81. At the May 18, 2020 Emergency Department visit, it is noted that Mr. Sobecke presented with foot drop and concern for compartment syndrome.

82. On May 18, 2020, Mr. Sobecke underwent three emergency fasciotomies.

83. Mr. Sobecke required multiple fasciotomies and is permanently impaired as a result of the delayed diagnosis and treatment of his compartment syndrome.

84. The delay in diagnosing and treating Mr. Sobecke's compartment syndrome caused irreversible leg and foot damage, including drop foot, even after multiple emergency fasciotomies.

85. As a result of Defendants' negligence, Mr. Sobecke's life has been forever damaged.

86. Prior to May 16, 2020, Mr. Sobecke was independent and active and able to work, including extensive traveling for work.

87. Mr. Sobecke's life has completely changed as a result of the failure to timely diagnose and treat his compartment syndrome resulting in permanent injuries.

88. If Defendants Kozlowski, Smith, Beard and HealthOne not discharged Mr. Sobecke he would have been in the hospital and his developing compartment syndrome would have been timely diagnosed and treated before muscle and nerve damage occurred, preventing Mr. Sobecke's permanent injuries.

89. If Defendants Quintana and Ludtke had properly recognized Mr. Sobecke's signs and symptoms of compartment syndrome and not persuaded him not to return to the hospital, Mr. Sobecke's compartment syndrome would have been timely diagnosed and treated before muscle and nerve damage occurred, preventing Mr. Sobecke's permanent injuries.

90. As a direct and proximate result of the negligence by the above Defendants, including but not limited to, failing to perform any physical examination of Mr. Sobecke's leg and advising him not to seek emergency medical treatment, Patrick Sobecke has suffered severe and permanent injuries as more fully set forth below.

91. As a direct and proximate result of the negligence of Defendants, Mr. Sobecke has suffered significant and permanent foot/leg injury, physical dysfunction, impairment, emotional distress, mental anguish and physical suffering. Mr. Sobecke's injuries have been and will continue to be disabling, incapacitating, and humiliating. Mr. Sobecke's injuries are permanent. Mr. Sobecke has been and will be forced to spend money for assistance, medicine, medical care, hospital care, radiologic imaging, doctors' fees, rehabilitation, physical therapy, other types of therapy, and assistance, as well as other medical related expenses. Mr. Sobecke has suffered a loss of earnings and earning capacity. Mr. Sobecke has lost the ability to enjoy a normal life.

92. As a direct and proximate result of the negligence of Defendants, Mr. Sobecke has past and future economic losses, past and future non-economic losses, past and future disfigurement damages, and past and future physical impairment damages. These losses include but are not limited to past and future wage loss, loss of earning capacity past and future expenses for assistance, physicians, hospitalizations, and rehabilitation and related medical care, equipment and treatment. Mr. Sobecke has been forced to spend money in the past for expenses for physicians, hospitalizations, rehabilitation, and related medical care and treatment and will, in the future, be forced to spend monies for medicine, hospital care, doctors' fees, medical procedures, assistance and other related medical and rehabilitation costs. Mr. Sobecke has been and will be forced to spend money in the future for medicines, hospital care, doctors' fees, medical procedures, and other related rehabilitation costs.

### FIRST CLAIM FOR RELIEF
**(Mark Kozlowski, M.D. – Negligence)**

93. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

94. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of Defendant Kozlowski.

95. Defendant Kozlowski was negligent in the care and treatment of Mr. Sobecke, and, as a direct and proximate result, Mr. Sobecke suffered severe injuries, damages, and losses.

96. With respect to his care and treatment of Plaintiff Patrick Sobecke, Defendant Dr. Kozlowski owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations. Defendant Dr. Kozlowski deviated from that standard and was negligent, including but not limited to, as follows:

   a. Failing to timely and appropriately diagnose Plaintiff's condition on May 16, 2020;

   b. Failing to provide and recommend timely and appropriate treatment to Plaintiff on May 16, 2020;

   c. Failing to timely and appropriately consult with or refer to appropriate medical professionals and specialists regarding the evaluation, care and treatment of Plaintiff on May 16, 2020;

   d. Failing to perform the appropriate evaluation of Plaintiff on May 16, 2020;

    e. Failing to properly manage the evaluation, diagnosis and treatment of Plaintiff on May 16, 2020;

    f. Failing to timely and appropriately ensure that Plaintiff was admitted to the hospital on May 16, 2020, for a 24-hour observation period as required with tibial plateau fracture;

    g. Failing to provide timely and accurate information concerning Mr. Sobecke's medical condition to his health care providers on May 16, 2020;

    h. Failing to recognize that Mr. Sobecke's medical condition of left tibial plateau fracture required a 24-hour in-hospital observation period;

    i. Failing to recognize the severity of Mr. Sobecke's condition.

    j. Discharging Mr. Sobecke when he should have been kept in the hospital.

97. As a direct and proximate result of the negligence of Defendant Kozlowski, Mr. Sobecke has suffered significant and permanent leg and/or foot injury, physical impairment and disfigurement, emotional distress, mental anguish and physical suffering. Mr. Sobecke's injuries have been and will continue to be disabling, incapacitating, and humiliating. Mr. Sobecke's injuries are permanent. Mr. Sobecke has been and will be forced to spend money for assistance, medicines, prescriptions, hospital care, imaging studies, doctors' fees, surgical procedures, rehabilitation, physical therapy, other types of therapy, , and long-term care and assistance. Mr. Sobecke has suffered a loss of income and loss of earning capacity. Mr. Sobecke has lost the ability to enjoy a normal life. Mr. Sobecke has suffered and will continue to suffer economic losses including, but not limited to, medical expenses for pharmaceuticals, physicians, hospitalizations, imaging studies, doctors' fees, surgical procedures, physical therapy, other therapies, rehabilitation, , equipment, and related medical care and treatment, as well as long-term care and assistance. Mr. Sobecke has suffered and will continue to suffer a loss of home and family care services.

## SECOND CLAIM FOR RELIEF
### (Wade Smith, M.D. – Negligence)

98. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

99. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of Defendant Smith.

100. Defendant Smith was negligent in the care and treatment of Mr. Sobecke, and, as a direct and proximate result, Mr. Sobecke suffered severe injuries, damages, and losses.

101. With respect to his care and treatment of Plaintiff Patrick Sobecke, Defendant Smith owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations. Defendant Smith deviated from that standard and was negligent, including but not limited to, as follows:

    a. Failing to timely and appropriately evaluate, diagnose and treat Plaintiff's medical condition on May 16, 2020;

    b. Failing to arrange for timely and appropriate medical care and treatment for Plaintiff's medical condition on May 16, 2020;

    c. Failing to timely and appropriately review and respond to Plaintiff's imaging on May 16, 2020;

    d. Failing to timely and appropriately ensure that Plaintiff was admitted to the hospital on May 16, 2020, for a 24-hour observation period as required with tibial plateau fracture;

    e. Failing to timely and appropriately get Plaintiff emergency medical evaluation, care, and treatment, as required for his medical condition on May 16, 2020;

    f. Discharging Mr. Sobecke;

    g. Failing to recognize or appreciate the severity of Plaintiff's medical condition.

102. As a direct and proximate result of the negligence of Defendant Smith, Mr. Sobecke has suffered the injuries, damages and losses as more fully described herein.

### THIRD CLAIM FOR RELIEF
### (Allison Beard, R.N. – Negligence)

103. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

104. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of Defendant Beard.

105. Defendant Beard was negligent in the care and treatment of Mr. Sobecke, and, as a direct and proximate result, Mr. Sobecke suffered severe injuries, damages, and losses.

106. With respect to her care and treatment of Plaintiff Patrick Sobecke, Defendant Beard owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of nurses in similar situations. Defendant Beard deviated from that standard and was negligent, including but not limited to, as follows:

    a. Failing to timely and appropriately evaluate and treat Plaintiff's medical condition on May 16, 2020;

    b. Failing to arrange for timely and appropriate medical care and treatment for Plaintiff's medical condition on May 16, 2020;

    c. Failing to timely and appropriately ensure that Plaintiff was admitted to the hospital on May 16, 2020, for a 24-hour observation period as required with tibial plateau fracture;

    d. Failing to timely and appropriately activate the chain of command when Plaintiff was not admitted to the hospital for a 24-hour observation period for his medical condition on May 16, 2020;

    e. Failing to timely and appropriately get Plaintiff emergency medical evaluation, care, and treatment, as required for his medical condition on May 16, 2020;

    f. Discharging Mr. Sobecke;

    g. Failing to recognize or appreciate the severity of Plaintiff's medical condition.

107. As a direct and proximate result of the negligence of Defendant Beard, Mr. Sobecke has suffered the injuries, damages and losses as more fully described herein.

## FOURTH CLAIM FOR RELIEF
(**Defendant HCA-HealthOne LLC, d/b/a Swedish Medical Center – Respondeat Superior/Vicarious Liability**)

108. Plaintiff incorporates all the paragraphs in this Complaint herein by reference.

109. At all relevant times, nurses and other healthcare providers of Defendant HealthOne, including but not limited to Nurse Beard, who were involved in the care and treatment of Mr. Sobecke on May 16, 2020, were officers, agents, shareholders, employees, independent contractors and/or partners of Defendant HealthOne, acting within the course and scope of their employment or within their authority as agents of Defendant HealthOne.

110. The nurses and other healthcare providers of Defendant HealthOne participated in the care and treatment of Mr. Sobecke in the Emergency Department on May 16, 2020.

111. The nurses and other healthcare providers of Defendant HealthOne were negligent in their care and treatment of Mr. Sobecke and, as a result, Mr. Sobecke suffered injuries, damages, and losses as more fully set forth elsewhere herein.

112. With respect to the care and treatment of Mr. Sobecke, the nurses and other healthcare providers of HealthOne had a duty to exercise that degree of care, skill, caution, diligence and foresight exercised and expected of nurses and other health care providers in similar situations.

113. The nurses and other healthcare providers of HealthOne deviated from that standard of care and were negligent in the care and treatment of Mr, Sobecke, including but not limited to, the following:

    a. Failing to properly evaluate, assess, monitor and report Mr. Sobecke's medical condition;

    b. Failing to properly and timely discuss Mr. Sobecke's medical condition with appropriate medical personnel;

    c. Failing to go up the chain of command when Dr. Kozlowski and Dr. Smith did not admit Mr. Sobecke to the hospital for 24-hour observation period;

    d. Failing to go up the chain of command when Dr. Smith did not admit Mr. Sobecke to the hospital for a 24-hour observation period;

    e. Discharging Mr. Sobecke;

    f. Failing to appreciate and recognize the severity of Plaintiff's condition.

114. Defendant HealthOne is responsible for the acts and omissions of its agents, employees, officers, directors, independent contractors, shareholders and/or partners including, but not limited to, its nurses and other healthcare providers acting within the course and scope of their employment and within their authority as agents of Defendant HealthOne.

115. As a direct and proximate result of the negligence of Defendant HealthOne, Mr. Sobecke has suffered the injuries, damages and losses as more fully described herein.

## FIFTH CLAIM FOR RELIEF
**(Defendant HCA-HealthOne LLC, d/b/a Swedish Medical Center – Negligence)**

116. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

117. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of HealthOne.

118. Defendant HealthOne owed a duty to exercise reasonable care in the operation of an Emergency Department.

119. Upon information and belief, Defendant HealthOne breached its duty and was negligent in its care and treatment of Mr. Sobecke, including, but not limited to, the following:

    a. Failing to have adequate guidelines, protocols, policies and/or procedures with regard to admitting patients with tibial plateau fractures to the hospital for a 24-hour observation period;

    b. Failing to have adequate guidelines, protocols, policies and/or procedures on activating the chain of command;

    c. Failing to have adequate guidelines, policies and/or procedures with regards to discharging a patient with a tibial plateau fracture;

    d. Failing to adequately educate and train staff on when and how to activate the chain of command; and

    e. Failing to provide reasonable care.

  120. As a direct and proximate result of the negligence of HealthOne, Mr. Sobecke has suffered the injuries, damages and losses as more fully described herein.

### SIXTH CLAIM FOR RELIEF
**Joint and Several Liability (Defendants Kozlowski, Smith, Beard and HealthOne)**

  121. Plaintiff incorporates all paragraphs in this Complaint as if fully set forth herein.

  112. At all relevant times, Defendants Kozlowski, Smith, Beard and HealthOne had an explicit agreement and understanding that they all, along with other agents and representatives of HealthOne, would care for Mr. Sobecke for the mutual benefit of Defendants Kozlowski, Smith, Beard and HealthOne.

  113. At all relevant times, Defendants Kozlowski, Smith, Beard and HealthOne were bound by the policies and procedures put in place by HealthOne.

  114. At all times, Defendants Kozlowski, Smith, Beard and HealthOne intended to be bound as a team for providing medical care for Mr. Sobecke.

  115. Without the agreement(s) between Defendants Kozlowski, Smith, Beard and HealthOne to pursue a common plan or design, the tortious lack of treatment would have not occurred.

  116. The relevant tortious injury occurred during the course of the Defendants Kozlowski, Smith, Beard and HealthOne's execution of their common plan or design

  117. Defendants Kozlowski, Smith, Beard and HealthOne were acting in concert at the time of the tortious conduct leading to Mr. Sobecke' injuries.

  118. Defendants Kozlowski, Smith, Beard and HealthOne deliberately participated in the acts required for carrying out their common plan or design.

  119. As part of a treatment team and/or while pursuing a common plan or design, Defendants Kozlowski, Smith, Beard and/or HealthOne were able to direct, supervise, or control the actions of the other members of the team.

  120. During the execution of Defendant Defendants Kozlowski, Smith, Beard and HealthOne's common plan or design, Defendants Kozlowski, Smith, Beard and HealthOne negligently cared for Mr. Sobecke, leading to his injuries.

121. Such conduct constitutes a tortious act for purposes of imposing joint liability to Defendants Kozlowski, Smith, Beard and HealthOne pursuant to C.R.S. § 13-21-111.5(4).

122. As a direct and proximate result of Defendants Kozlowski, Smith, Beard and HealthOne's conduct, as more fully described herein, in carrying out their common plan, Mr. Sobecke received negligent medical treatment, causing Mr. Sobecke to suffer severe injuries, damages, and losses, as more fully described herein.

### SEVENTH CLAIM FOR RELIEF
(Cassidy Quintana and Matthew Ludtke– Negligence)

123. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

124. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of Defendants Quintana and Ludtke.

125. Defendants Quintana and Ludtke were negligent in the care and treatment of Mr. Sobecke, and, as a direct and proximate result, Mr. Sobecke suffered severe injuries, damages, and losses.

126. With respect to their care and treatment of Plaintiff Patrick Sobecke, Defendants Quintana and Ludtke owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of emergency medical technicians in similar situations. Defendants. Quintana and Ludtke deviated from that standard and was negligent, including but not limited to, as follows:

   a. Failing to timely and appropriately evaluate and treat Plaintiff's medical condition on May 16, 2020;

   b. Failing to arrange for timely and appropriate medical care and treatment for Plaintiff's medical condition on May 16, 2020;

   c. Failing to timely and appropriately ensure that Plaintiff was transported to a hospital on May 16, 2020 when he continued to have pain from his tibial plateau fracture; and

   d. Failing to timely and appropriately get Plaintiff emergency medical evaluation, care, and treatment, as required for his medical condition on May 16, 2020;

   e. Failing to recognize and appreciate the severity of Plaintiff's medical condition.

127. As a direct and proximate result of the negligence of Defendants Quintana and Ludtke, a direct and proximate result of the negligence of their negligence, Mr. Sobecke has suffered a significant and permanent leg and/or foot injury, physical impairment and disfigurement, emotional distress, mental anguish and physical suffering. Mr. Sobecke's injuries have been and will continue to be disabling, incapacitating, and humiliating. Mr. Sobecke's injuries are permanent. Mr. Sobecke has been and will be forced to spend money for assistance, medicines, prescriptions, hospital care, imaging studies, doctors' fees, surgical procedures,

rehabilitation, physical therapy, other types of therapy, and long-term care and assistance. Mr. Sobecke has suffered a loss of income and loss of earning capacity. Mr. Sobecke has lost the ability to enjoy a normal life. Mr. Sobecke has suffered and will continue to suffer economic losses including, but not limited to, medical expenses for pharmaceuticals, physicians, hospitalizations, imaging studies, doctors' fees, surgical procedures, physical therapy, other therapies, rehabilitation, equipment, and related medical care and treatment, as well as long-term care and assistance. Mr. Sobecke has suffered and will continue to suffer a loss of home and family care services.

## NINTH CLAIM FOR RELIEF
(**Defendant Denver Health and Hospital Authority – Respondeat Superior/Vicarious Liability**)

126. Plaintiff incorporates all the paragraphs in this Complaint herein by reference.

127. At all relevant times, nurses and other healthcare providers of Defendant Denver Health, including but not limited to EMTs Quintana and Ludtke, who were involved in the care and treatment of Mr. Sobecke on May 16, 2020, were officers, agents, shareholders, employees, independent contractors and/or partners of Defendant Denver Health, acting within the course and scope of their employment or within their authority as agents of Defendant Denver Health.

128. The EMTs of Defendant Denver Health participated in the care and treatment of Mr. Sobecke at his home on May 16, 2020.

129. The EMTs Defendant Denver Health were negligent in their care and treatment of Mr. Sobecke and, as a result, Mr. Sobecke suffered injuries, damages, and losses as more fully set forth elsewhere herein.

130. With respect to the care and treatment of Mr. Sobecke, the EMTs of Denver Health had a duty to exercise that degree of care, skill, caution, diligence and foresight exercised and expected of EMTs in similar situations.

131. The EMTs of Denver Health deviated from that standard of care and were negligent in the care and treatment of Mr, Sobecke, including but not limited to, the following:

   a. Failing to timely and appropriately evaluate and treat Plaintiff's medical condition on May 16, 2020;

   b. Failing to arrange for timely and appropriate medical care and treatment for Plaintiff's medical condition on May 16, 2020;

   c. Failing to timely and appropriately ensure that Plaintiff was transported to a hospital on May 16, 2020 when he continued to have pain from his tibial plateau fracture; and

15

      d.  Failing to timely and appropriately get Plaintiff emergency medical evaluation, care, and treatment, as required for his medical condition on May 16, 2020;

      f.  Failing to recognize and appreciate the severity of Plaintiff's medical condition.

132. Defendant Denver Health is responsible for the acts and omissions of its agents, employees, officers, directors, independent contractors, shareholders and/or partners including, but not limited to, its nurses and other healthcare providers acting within the course and scope of their employment and within their authority as agents of Defendant Denver Health.

133. As a direct and proximate result of the negligence of Defendant Denver Health, Plaintiff has suffered permanent, significant injuries and damages as more fully described herein.

## TENTH CLAIM FOR RELIEF
### (Defendant Denver Health – Negligence)

134. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

135. On or about May 16, 2020, Mr. Sobecke was under the care and treatment of Denver Health.

136. Defendant Denver Health owed a duty to exercise reasonable care in the operation of its paramedic division.

137. Upon information and belief, Defendant Denver Health breached its duty and was negligent in its care and treatment of Mr. Sobecke, including, but not limited to, the following:

      a.  Failing to have adequate guidelines, protocols, policies and/or procedures with regard to transferring patients back to a hospital if they had been discharged with a tibial plateau fracture;

      b.  Failing to properly train its staff regarding the potential complications of a tibial plateau fracture in the first 24 hours;

      c.  Failing to provide reasonable care.

138. As a direct and proximate result of the negligence of Denver Health, Mr. Sobecke suffered severe injuries, damages, and losses as more fully described above.

WHEREFORE, Plaintiff respectfully prays for an award of compensatory damages in favor of the Plaintiff and against all Defendants in an amount to be determined by the trier of fact, all interest allowed by law including all prejudgment interest, all pre-filing interest, and all post judgment interest, all costs and expenses allowed under law including all expert witness fees, filing fees, and deposition expenses, and for such other and further relief as this Court may deem appropriate.

**PLAINTIFF DEMANDS A TRIAL TO A JURY.**

Respectfully submitted this 12th day of May, 2022.

                                  LEVENTHAL PUGA BRALEY P.C.

                                  By: */s/ Jim Leventhal*
                                  Jim Leventhal, #5815
                                  Julia T. Thompson, #25897
                                  Emily Olive Monnett, #55444
                                  Leventhal Puga Braley P.C.
                                  950 South Cherry Street, Suite 600
                                  Denver, Colorado 80246
                                  Telephone:  (303) 759-9945
                                  Facsimile:  (303) 759-9692
                                  *Attorneys for Plaintiff*

**PLAINTIFF'S ADDRESS**
1967 Wollett Mill Road
Battleboro, NC 27809